**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | |
|---|---|
| **SHARI YETTO and PAUL YETTO,**       ) | |
|       ) | |
|     **Plaintiffs,**       ) | |
|       ) | |
|       ) | |
|       ) | **No. 1:17-cv-01205-STA-egb** |
|       ) | |
| **v.**       ) | |
|       ) | |
| **CITY OF JACKSON, JERRY GIST, in his**       ) | |
| **official capacity as mayor, and ELVIS**       ) | |
| **HOLLIS, in his official capacity**       ) | |
| **as city planner,**       ) | |
|       ) | |
|     **Defendants.**       ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Shari and Paul Yetto filed this action against the City of Jackson, Tennessee, Mayor Jerry Gist, in his official capacity, and City Planner Elvis Hollis, in his official capacity, alleging that they violated the equal-terms provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. §§ 2000cc—2000cc–5, and the First Amendment's Free Exercise Clause.[1]  Plaintiffs seek a declaratory judgment ruling that the Zoning Ordinance at issue in this case does not regulate the type of small, religious gatherings

---

[1] Plaintiffs have sued Mayor Gist and City Planner Hollis in their official capacities.  These claims are the same as the claims against the City. *See Stewart v. City of Memphis*, 2017 WL 627467 at *4 (W.D. Tenn. Feb. 15, 2017) ("It is well-settled that an official capacity suit is nothing more than a suit against the governmental entity.")

held by them in their home, as well as a permanent injunction prohibiting the enforcement of the Zoning Ordinance against them and their religious gatherings.

On November 21, 2017, Plaintiffs filed a motion for a preliminary injunction. (ECF No. 15.) A hearing was held on the motion on December 22, 2017. (ECF No. 24). The Court orally granted the motion at the hearing, and a written order was entered on January 29, 2018. (ECF 25.) Defendants and their officers, agents, servants, employees, attorneys, and any other persons acting in concert with them were enjoined from enforcing or threatening to enforce the Zoning Ordinance against Plaintiffs for holding religious gatherings in their home and on their private residential property until further orders of the Court. (*Id.*)

The parties have now filed cross motions for summary judgment. (ECF Nos. 33, 34). The motions have been fully briefed. (Pls' Resp., ECF No. 37; Defs' Resp., ECF No. 38; Pls' Reply, ECF No. 39; Defs' Reply, ECF No. 40.) For the reasons set forth below, Plaintiffs' motion is **DENIED**, and Defendants' motion is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.

<u>Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*,

746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

<u>Statement of Undisputed Material Facts</u>

Pursuant to Local Rule 56.1, the parties have submitted the following statements of facts (Pls' St. of Mat. Facts, ECF No. 33-2; Defs' St. of Mat. Facts, ECF No. 34-2), which are undisputed unless otherwise noted.[2]

The Yettos are a married couple and two of the founders of a non-profit religious corporation known as the Temple of the Ancient Ones.

Shari Yetto owns two adjacent plots of land in the City of Jackson, where she and her husband live. One of the plots of land is located at 203 Harts Bridge Road. Ms. Yetto also owns

---

[2] The facts are stated for the purpose of deciding these motions only.

the plot of land on the corner of Dustin Road, which is adjacent to the plot at 203 Harts Bridge Road. One plot is owned in fee simple not subject to any liens or encumbrances, while the other is owned subject to a mortgage.

The Yettos follow the Pagan faith tradition, an "earth-based" religion through which they celebrate Pagan gods and goddesses. There are ten to fifteen members of the Temple of the Ancient Ones who gather to perform Pagan religious traditions. For years, the Yettos have hosted the only Pagan gatherings in Madison County. Each year the members hold between twenty-four and thirty-two gatherings, with each gathering lasting thirty to forty-five minutes. At the end of the gatherings, the members share a meal.[3]

The Yetto residence serves as the mailing address for the Temple.

On March 31, 2016, Elvis Hollis, on behalf of the City of Jackson Planning Department, sent a letter to the Yetto residence with the subject line that read: "ZONING VIOLATION AT 203 Harts Bridge Road, Jackson, TN 38301." The letter stated:

> Our office has been made aware that there may be a church operating at this location. . . . Churches or similar places of worship are uses permitted as special exceptions within [the RS-1] zoning classification. Therefore, you must obtain approval by the City Board of Zoning Appeals in order to operate a church at this location. A site plan that includes an off-street parking area must be submitted along with your application to appear before this board which meets on the fourth Monday of every month. In addition, the structure used for this purpose must be in compliance with all building and fire codes. The use of this property for a church should be discontinued until the process outlined above is completed.

The letter provided that "[f]ailure to correct this problem within thirty (30) days of your receipt of this letter will result in further action by the City of Jackson." "Further action" was explained as:

---

[3] Although Defendants have objected to some of Plaintiffs' facts as being not material to the determination of the motions, they do not dispute the accuracy of those facts. To the extent a fact is undisputed but is not material, the Court has included it as background.

[A]ny person violating any provision of the City of Jackson Zoning Ordinance who fails to correct said violation within this notification period shall be issued an injunction through the Environmental Court to correct this problem or face a fine of Fifty Dollars ($50.00) for each separate violation until the required action has been taken or face imprisonment not to exceed ten (10) days. Each day that any such violation continues shall constitute a separate violation.

Hollis sent the letter in response to a telephone complaint from an anonymous caller. Hollis does not recall the date of the call, does not know the name of the caller, and took no notes of the call. Hollis did not complete or have the caller complete the "Alleged Zoning Violation Complaint Form" developed by the City of Jackson Planning Department. The anonymous caller reported that the Yettos were operating a church at their residence but did not describe what activity was taking place at the residence or why the caller believed that the Yettos were operating a church.[4]

The Yettos ceased holding all Pagan gatherings after receiving the City's letter and did not host another gathering until after this Court granted a preliminary injunction in their favor. During the time period between the receipt of the letter from the City and the issuance of the injunction, the Yettos were not only prohibited from holding regular Pagan assemblies at their home, they were also prohibited from holding sacred ceremonies for loved ones who had passed away. Ms. Yetto was prevented from having religious memorial services for either of her parents.

After receiving the call, Hollis drove past the Yetto Residence once, took a photograph of a small sign that read "Temple of the Ancient Ones," and drove away without entering the Yetto residence or speaking with the Yettos. Hollis has since deleted the photograph he took of the sign. The sign was small, eighteen-inch by eighteen-inch, and was on the lot adjacent to the

---

[4] Defendants have disputed this fact to the extent that there is an "inference" that the City determined that the Yettos were operating a church as the term is defined in the Zoning Ordinance. (Defs' Resp. para. 15, ECF No. 38-1.) The Court has drawn no such inference.

Yettos' residence. It stood alongside other signs showing subjects for which the Yettos had an affinity - such as a sign for Avon products and a sign reading "Watch Out for Motorcycles." The Yettos later removed the sign, in part, in response to the City's letter.

The Planning Department undertook no additional investigation prior to the sending of the March 31, 2016 letter, and Hollis was not aware of any policies or procedures that set forth how such an investigation should take place.

The Yettos discussed the situation repeatedly and at length with City officials. Based on the March 31, 2016 letter and, at the direction of Hollis, the Yettos submitted a Board of Zoning Appeals application seeking a special exception. A Google maps printout of the property supplemented the application.[5] Hollis went to the Yettos' residence, toured their property, and took photographs, which he placed in the application file. The City's Engineering Department, at the request of Hollis, conducted a traffic review at the Yettos' residence.

Hollis prepared a Planning Staff Report for the use of the Board of Zoning Appeals. The Report stated that the planning staff recommended approval of the use of the property as a place of worship "contingent upon the following":

> 1. A walk thru inspection be completed by the City of Jackson Building Department and Fire Marshal before occupying the buildings.
>
> 2. All applicable building permits are obtained before any modification of the buildings.
>
> 3. A privacy fence or a vegetative screen needs to be installed around the perimeter of the parking area in order to provide a screen for the adjoining residential properties.
>
> 4. The existing 16' driveway needs to be widened to a minimum 24' two-way drive in order to meet the standards governing driveways.
>
> 5. Both lots owned by the applicant need to be combined by a final plat since the driveway access is located on 104 Dustin Drive.

---

[5] The parties dispute who printed the map, but that fact is not material to the resolution of the motions. (Defs' Resp. para. 24, ECF No. 38-1.)

The Report stated that the parking lot exceeded the requirements for "a place of worship with the seating capacity of 20 people," which was drawn from Hollis' knowledge that the Yettos planned on having a maximum of twenty people attend their gatherings. Hollis testified in his deposition that requirement number three, a privacy fence or vegetative screen, and number five regarding the combining of the properties, were not required by the Zoning Ordinance. Hollis could not identify the basis in the Zoning Ordinance for requiring a widening of the driveway.

The Yettos were originally scheduled to go before the Board of Zoning Appeals on June 27, 2016. However, given that Hollis would not recommend that they receive a special exception without the changes listed in the Report and the high cost of these changes, the Yettos decided they could not pursue a special exception and felt they had no choice but to pursue their rights in a lawsuit.

On July 21, 2016, the Yettos started a Change.org petition in which they accused the City of violating their right to freely worship. In their petition, the Yettos said, "We feel it is time to stand up not only for ourselves but for anyone else that might have these [r]ights as well as others taken from them, Pagan or otherwise." Also on July 21, 2016, the Yettos launched a GoFundMe campaign to raise attorney's fees to fight the City.

The July 25, 2016 meeting of the Board of Zoning Appeals at which the Yettos' application was to be considered was canceled because the notice to affected property owners was not sufficient.

Prior to July 25, 2016, Paul Yetto told the City's attorney that they were going to sue the City. The Yettos hired the ACLU to represent them in this matter prior to September 26, 2016. The Yettos filed their complaint in this Court on November 3, 2017.

The Zoning Ordinance of the City of Jackson was created to provide administration, enforcement, and amendment" of city zoning regulation.[6]  "In interpreting and applying the provisions of [the Zoning Ordinance, its provisions] shall be considered as the minimum requirements for the promotion of the public safety, health, morals and general welfare."

The Planning Department of the City of Jackson regulates the use of property in accordance with the Zoning Ordinance.

The Yetto residence is located in a district that is residential in nature and is designated as a RS-1 residential district.

Pursuant to the Zoning Ordinance, each zoning category has uses that are permitted uses, uses that are prohibited, and uses that are permitted only with approval from the Board of Zoning Appeals.  With respect to special exceptions, the Board of Zoning Appeals is empowered to attach conditions for approval.

As part of the process for obtaining a special exemption, an applicant must fill out an application and appear before the Board. The staff of the Planning Department makes recommendations to the Board of Zoning Appeals, and the Board may approve or deny the application. The application fee for obtaining a special exemption is $100.  The Planning Department makes its recommendations through a Planning Staff Report.

The Zoning Ordinance regulates "churches or similar places of worship" as a use that is permitted by way of a special exception.  The Zoning Ordinance does not define the phrase "churches or similar places of worship," and the City maintains no policies or guidance with respect to the definition or interpretation of "churches or similar places of worship" as that phase

---

[6]  Defendants do not dispute this statement or other statements concerning the purpose and requirements of the Zoning Ordinance but contend that "the Zoning Ordinance speaks for itself." (Defs' Resp. paras 34 -35, 50, ECF No. 38-1.)

is used in the Zoning Ordinance.[7]  The City maintains no policy or guidance with respect to the application of special exceptions with respect to "churches or similar places of worship."

The Planning Staff Report acknowledged that the gatherings at the Yetto residence would not exceed twenty people and stated expressly that parking on the Yettos' property was sufficient in that it exceeded "the parking requirement" for gatherings of that size.

The Zoning Ordinance includes "Private Clubs" as a use that is permitted only by way of special exception.  The term "Private Clubs" is defined in the Zoning Ordinance as "[b]uildings and facilities owned or operated by a corporation, association, person or persons for a social, educational or recreational purpose, but not primarily for profit or to render a service which is customarily carried on as a business."

In the City, there are organizations and assemblies of a secular nature that regularly meet on private property, such as Boy Scouts and Girl Scouts.  In addition, families, like the Yettos, regularly hold events of comparative size and frequency to that of the Yettos' religious gatherings, such as family reunions, holiday parties, and gatherings to watch sports.  A neighbor on the same street as the Yettos regularly held large gatherings every Saturday and Sunday night, which included loud music and a large number of vehicles parked on the street. [8]

There are multiple churches in the Jackson area that host weekly or monthly Bible study groups in various residential homes. These churches include West Jackson Baptist Church, Campbell Street Church, First Baptist Church, Fellowship Bible Church, and First Cumberland

---

[7]  Defendants correctly point out that there is no record citation to this "statement of fact," and they ask the Court to ignore the statement.  (Defs' Resp. para. 45, ECF No. 38-1.) However, Defendants do not claim that the phrase "churches or similar places of worship" is defined in the Zoning Ordinance, and they do not dispute that the City "maintains no policies or guidance with respect to the definition or interpretation" of that phrase.  (*Id.* at para. 46.)

[8]  Defendants do not dispute these statements but contend that the statements do "not meet the requirements of establishing comparators for the Yettos."  (*Id.* at paras. 52 – 54.)

Presbyterian Church. Another church, All Saints Anglican Church, hosted weekly religious meetings in a residence until at least 2014. None of these private homes were required to comply with the zoning regulations for religious organizations.[9]

Analysis

Section 1983

Defendants contend that they are entitled to summary judgment on Plaintiffs' § 1983 First Amendment Free Exercise claim because they waited more than a year after the accrual of their claim to commence this action, and, thus, the one-year statute of limitations bars the claim. Because the Court finds Defendants' contention to be meritorious, the Court need not reach the issue presented in Plaintiffs' motion for summary judgment as to whether Defendants' application of the Zoning Ordinance violates the Free Exercise Clause.

As noted by Defendants, § 1983 provides for a federal cause of action but looks to the law of the state in which the cause of action arose to determine the applicable statute of limitations. S*ee Wallace v. Kato*, 594 U.S. 384, 387 (2007) (reiterating that suits under § 1983 have the same statute of limitations as the personal injury statute of limitations in the state in which the action is brought); Tenn. Code Ann. § 28-3-104 (the statute of limitations in Tennessee for personal injury claims is one year). It is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action,'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)), that is, when "the plaintiff can file suit and obtain relief." *Id.* "[I]n determining when a cause of action accrues in § 1983 actions, [courts] have looked to what event should have alerted the typical lay person to protect his or her right."

---

[9] Defendants do not dispute these statements but contend that these gatherings are not sufficiently like the Yettos to serve as comparators. (*Id.* at para. 59.)

*Howell v. Farris,* 655 F. App'x 349, 351 (6th Cir. 2016) (quoting *Kuhnle Bros., Inc. v. County of*

*Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

Defendants point to the following actions and corresponding dates as the accrual date(s)

for Plaintiffs' claims:[10]

> The March 31, 2016 letter sent to Plaintiffs by Hollis regarding the use of their
> property for religious purposes which was received no later than early April 2016;
>
> Plaintiffs' decision in June 2016 that they could not pursue a special exception
> because of "the high cost and arbitrariness of these changes" and they had no
> choice but to pursue their rights in a lawsuit;[11]
>
> Plaintiffs' July 21, 2016 decision to "stand up . . . for [themselves and] for anyone
> else that might have these [r]ights taken from them" by starting a Change.org
> petition which accused the City of violating their right to freely worship;
>
> Plaintiffs' launching of a GoFundMe campaign on July 21, 2016, to raise
> attorney's fees to fight the City over the alleged violation of their constitutional
> rights;
>
> Plaintiffs' hiring of the ACLU to represent them in this matter before September
> 2016, and the ALCU's representation of Plaintiffs no later than September 26,
> 2016.

The complaint in this matter was filed on November 3, 2017. According to Defendants,

Plaintiffs' cause of action accrued on any of these dates which preceded November 3, 2017, by

more than one year, and, therefore, the cause of action is barred by the one-year statute of

limitations. Plaintiffs contend that their claim is not time-barred because Defendants' actions

constitute a continuing violation, while Defendants argue that the continuing violation doctrine

does not apply to Plaintiffs' claim.

---

[10] These dates are not disputed by Plaintiffs, although they do dispute the effect that the dates
had on the accrual of their claim.

[11] "However, given that Mr. Hollis would not recommend that Plaintiff receive a special
exception without the changes listed in the Report, and the high cost and arbitrariness of these
changes, the Yettos decided they could not pursue a special exception and felt they had no choice
but to pursue their rights in the current lawsuit." (Pls' Memo. p. 7, ECF No. 33-1.)

Federal courts recognize that, when a pattern or practice of behavior results in a continuing violation of a plaintiff's rights, the statute of limitations is deemed to begin running only with the conclusion of the pattern of harmful conduct such as when the last wrongful event occurs. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).[12]  That is, a continuing violation exists when "discriminatory acts [are] committed under an ongoing policy of discrimination." *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (internal quotation marks and citation omitted.)  However, a continuing violation claim fails when "the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred." *Davidson v. America Online, Incl.*, 337 F.3d 1179, 1184 (10th Cir. 1993).  The continuing violation theory is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated. *Id.* (citation and quotation omitted).

The Eleventh Circuit also has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been able to determine that a violation had occurred." *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]" *Id.* (alteration in original) (internal quotation marks and citation omitted). *See also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("The doctrine applies [when]

---

[12]  *Morgan*, a case governed by Title VII's anti-discrimination provision, distinguished between "discrete discriminatory acts" that are individually actionable and acts of harassment that, while not individually actionable, may collectively subject an employer to liability under a hostile work environment theory.  The Sixth Circuit has applied *Morgan* and the continuing violation doctrine to § 1983 cases - although "rarely."  *See Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (explaining that the longer statute of limitations for § 1983 actions minimizes the need for a continuing violations exception compared to the relatively short deadlines for Title VII claims).

there is no single incident that can fairly or realistically be identified as the cause of significant harm."); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) ("[M]ere continuing impact from past violations is not actionable.").

Defendants rely, in part, on *Mitchell v. Clackamas River Water*, 2016 WL 6471450 (D. Or.), *aff'd* 772 F. App'x 418 (9th Cir. 2018), in support of their argument that Plaintiffs' action is time-barred. In *Mitchell*, the defendant obtained a gag order prohibiting the plaintiff from "using, disclosing, or otherwise disseminating any records created, maintained, or kept in the ordinary course of plaintiff's business that are now or have been in defendant's possession at any time." *Id.* at *2. The gag order was entered on July 25, 2011. *Id.* On March 26, 2016, the plaintiff filed a lawsuit alleging that the gag order violated his First Amendment rights. *Id.* at *5. The defendant moved to dismiss because the gag order was entered before March 26, 2014, and, thus, was time-barred under Oregon's two-year statute of limitations. *Id.* In response, the plaintiff argued that the gag order constituted a continuing violation of his rights that persisted until the appellate court judgment lifting the order became final. *Id.*

The district court held that the cause of action accrued on the day that the gag order was issued and dismissed the complaint as untimely. The plaintiff "was well aware of the injury on the date the order was issued and had all the facts necessary to state his claim." *Id.* What the plaintiff characterized as a continuing violation was, instead, the continuing effects of the alleged violation. *Id.*

Defendants also direct the Court's attention to *Beebe v. Birkett*, 749 F. Supp.2d 580, 596 (E.D. Mich. 2010). In *Beebe*, a prisoner filed a § 1983 action against prison officials alleging, *inter alia*, that he was denied Kosher meals and Jewish religious services in violation of the Free Exercise Clause of the First Amendment. The prisoner plaintiff applied for the prison's kosher

meal program, but the warden denied him access to the program. The plaintiff waited over two years after being notified of the denial before filing suit. *Id.* at 584. The Court determined that the decision denying the request for access to the meal program was a discrete act; therefore, the continuing violation doctrine did not apply to save any claims that were filed outside Michigan's statute of limitations. *Id.* at 596-97.

According to Defendants, notification to Plaintiffs that they could not hold gatherings at their house was a discrete act that caused the accrual of their cause of action. Thus, Defendants reason that the cause of action accrued in early April 2016, upon receipt of the City's letter, or, at the latest, when they made the decision to sue based in June and July 2016.[13] Defendants also point out that Plaintiffs had hired the ACLU to represent them by September 2016. All these dates occurred more than one year before the filing of their lawsuit.

In response, Plaintiffs rely on *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997), which held that "the continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Id.* at 522 (citation omitted). In *Kuhnle Brothers*, a trucking company challenged the constitutionality of a county ordinance that banned truck travel on county roads. *Id.* at 551-52. The Court held that, because the ordinance barred the company from using the roads in question on an ongoing basis, it deprived the company of its constitutional rights every day that it remained in effect, thus inflicting "continuing and accumulating harm." *Id.* Plaintiffs note that they ceased holding all gatherings based on their receipt of the City's letter and their fear of threatened fines and imprisonment. According to

---

[13] Paul Yetto testified in his deposition that he told the City "sometime before July 25th" that they were going to file a lawsuit based on a "First Amendment violation, freedom of religion." (P. Yetto Depo. pp. 21 - 22, ECF No. 34-3.) At that point, he was told that all future correspondence must go through Lewis Cobb, the City's attorney. (*Id.*) He also testified that, at that point, they had begun "the process of trying to find a lawyer to handle" the lawsuit, and they set up the GoFund Me account to raise money to pay a retainer. (*Id.*)

Plaintiffs, Defendants continued to violate their rights on a daily basis by threatening fines and/or imprisonment until the entry of the preliminary injunction, and, thus, their claims are not barred by the statute of limitations.

Defendants have replied that the Sixth Circuit distinguished *Kuhnle Brothers* in *Goldsmith v. Sharrett*, 614 Fed. App'x 824, 828 (6th Cir. 2015), a First Amendment case. In *Goldsmith*, the prisoner plaintiff complained of "a series of events involving repeated seizures of his manuscripts by prison staff." *Id.* at 825. Eventually, the defendants allegedly "instituted a complete and ongoing ban on his writing" which the plaintiff claimed "constitute[ed] a continuing violation of his rights under the First Amendment." *Id.* at 828. In arguing that his cause of action was not barred by the statute of limitations, the plaintiff relied on *Kuhnle Brothers*. *Id.*

The *Goldsmith* Court found *Kuhnle Brothers* inapplicable because *Kuhnle Brothers* involved a county resolution that was found to be unlawful and, in that case, "each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm' on Kuhnle." *Id.* (quoting *Kuhnle Brothers*, 103 F.3d at 522). There was no such unlawful or invalid resolution, ruling, or law in *Goldsmith*. Likewise, in the present case, the Zoning Ordinance has not been found to be invalid or unlawful.

*Kovacic v. Cuyahoga County. Dep't of Children and Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010), is illustrative. In *Kovacic*, the plaintiff mother alleged a violation of her due process rights based on the removal of her children by the police. *Id.* at 307. The Court found that the plaintiff's claim accrued on the day the juvenile court magistrate found probable cause to keep her children in the temporary care of Family Services and rejected her argument that the removal of her children was a "continuing violation" which did not end until their return to her

because "the precipitating event in this action was the initial removal of her children from her custody." (*Id.*)

> Nancy [Kovacic] concedes that the precipitating event in this action was the initial removal of her children from her custody on March 26, 2002. A continuing violation in a § 1983 action occurs when there are continued unlawful acts, not by continued ill effects from the original violation. *McCune v. The City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). We have held in a similar case that "mere inaction" on a temporary custody petition is not enough to find a continuing violation. *Eidson v. State of Tenn. Dep't of Children's Sevs.*, 510 F.3d 631, 637 (6th Cir. 2007).

*Kovacic*, 606 F.3d at 308. The Court further explained that, with regard to plaintiff's argument "that her claim did not accrue until [the custody petition] was dismissed in November 2003, resolution of the claims in her complaint was not dependent on a final determination of her custody case.  If, as Nancy claims, the removal was unlawful, it remained unlawful regardless of the final disposition of her case." *Id.*  Here the "precipitating event" was the letter sent by Hollis.

Accordingly, the Court finds that Plaintiffs' First Amendment claim arises from discrete acts by Defendants, acts whose occurrence and consequences were readily ascertainable to Plaintiffs.  Plaintiffs had a viable claim on the date that they received the letter.  They certainly had one by the time the Planning Department staff had recommended conditions for the approval of a special use exception.  As evidenced by Plaintiff Paul Yetto's conversation with City Attorney Lewis Cobb, Plaintiffs believed that their rights had been violated by the City's letter and by the Planning Staffing Report which stated that an exception would be granted only upon the completion of certain requirements, and they planned to sue the City based on the alleged violation.  Under these circumstances, the continuing violation doctrine does not apply to toll the running of the statute of limitations beyond one year from those dates cited by Defendants.  *See Robinson v. Genesee Cty. Sheriff's Dept*, 2018 WL 4145933 at *5 (E.D. Mich. Aug. 30, 2018) ("When the alleged 'continuing violation' consists of actions that are actionable on their own,

they do not qualify in the aggregate as a continuing violation.") (citing *Goldsmith*, 614 F. App'x at 828-29)).  Thus, Plaintiffs' First Amendment claim is untimely and is dismissed.

RLUIPA

Plaintiffs contend that they are entitled to summary judgment on their RLUIPA claim because the undisputed facts show that, by singling out their religious meetings, the City's Zoning Ordinance has been selectively enforced against a religious observance.  They seek a declaration that the Zoning Ordinance violates RLUIPA facially and/or as applied.  Defendants contend that they are entitled to summary judgment because Plaintiffs cannot establish a prima facie case under RLUIPA and they cannot establish that the Zoning Ordinance differentiates between religious and nonreligious assemblies or institutions.  The Court finds that this case presents disputed facts that preclude granting summary judgment to either party.

RLUIPA prohibits governments from implementing land use regulations that impose "a substantial burden" on religious exercise or that "treat[ ] a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."[14]  42 U.S.C.A. § 2000cc.  It is a violation of RLUIPA if: (1) a statute facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute is "gerrymandered" in a way that it places a burden solely on religious, as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute is selectively enforced against religious, as opposed to nonreligious, assemblies or institutions. *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1308 (11th Cir. 2006).  In the present case, Plaintiffs have asserted claims for the first and

---

[14]  Plaintiffs have clarified that, while their motion for summary judgment mentions the substantial burden portion of RLUIPA, their claims are brought only under the equal-terms aspect of RLUIPA only.  (Pls' Reply p. 7 n. 6, ECF No. 39.)

third types of violations.[15]   That is, they claim that (1) the Zoning Ordinance facially differentiates between religious and nonreligious assemblies and institutions and (2) the Zoning Ordinance is selectively enforced against religious assemblies or institutions.

The first matter the Court must decide is whether Plaintiffs have established a prima facie case under RLUIPA.  To establish a prima facie case under the equal-terms provision, a plaintiff must show that (1) it is a religious assembly or institution, (2) subject to a land use regulation, that (3) treats it on less than equal terms with (4) a nonreligious assembly or institution.  *Tree of Life Christian Sch. v. City of Upper Arlington, Ohio*, 905 F.3d 357, 367 (6th Cir. 2018) (*Tree of Life III*).  Defendants contend that Plaintiffs cannot meet the requirements of the first element because they are not a "religious assembly or institution."  Plaintiffs have countered that the equal-terms provision protects individuals as well as houses of worship and other religious institutions.  The Court need not decide the issue of whether the provision protects individuals because there is undisputed evidence in the record that Plaintiffs and a group of their fellow Pagans have periodically assembled on Plaintiffs' property for religious observances, and, thus, they constitute a "religious assembly."[16]

There is no dispute that Plaintiffs and their assemblies have been subjected to land use regulation.  However, Defendants contend that Plaintiffs cannot show that they were treated on less equal terms than a nonreligious assembly or institution, the third and fourth elements of a prima facie case.  "[A] comparator for an equal terms claim must be similarly situated with regard to the regulation at issue." *Tree of Life III*, 2018 WL4443591 at *7. "[T]he comparison

---

[15]  Plaintiffs have not asserted a claim under the second type of violation - religious gerrymandering.  (Pls' Resp. p. 8 n. 5, ECF No. 37.)

[16]  Whether these "assemblies" or gatherings qualify as a "church" within the meaning of the Zoning Ordinance is discussed below.

required by RLUIPA's equal terms provision is to be conducted with regard to legitimate zoning criteria set forth in a municipal ordinance in question." *Id.* at 8. In applying this test, "the Eleventh Circuit evaluated whether a comparator was similarly situated to a house of worship by considering whether permitted land uses had a 'comparable community impact'" *Id.* (discussing *Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005)). This requires proof that "'a similarly situated nonreligious comparator received differential treatment under the challenged regulation.'" *Id.* (quoting *Primera Iglesia Bautista Hispana*, 450 F.3d at 1311 and n.1).

In the present case, Defendants have pointed to the deposition testimony of Plaintiff Shari Yetto that "religious, nonreligious doesn't really matter. They're not bothering anybody else but us." (S. Yetto Depo. p. 65 – 66, ECF No. 34-4.) Defendants assert that this testimony shows that no distinction was made between the City's treatment of Plaintiffs regarding their land usage and that of nonreligious entities.

Plaintiffs have responded that they have provided evidence of appropriate comparators under the equal-terms provision. Specifically, they point to Plaintiff Shari Yetto's testimony that secular organizations, such as Boy Scouts and Girl Scouts, regularly meet on private property in residential neighborhoods. (*Id.* at pp. 60-62.) In addition, families hold events of comparative size and frequency to that of the Plaintiffs' gatherings, such as family reunions, holiday parties, and gatherings to watch sports. (*Id.* at pp. 61-62.) A neighbor on Plaintiffs' street regularly holds large gatherings every Saturday and Sunday night; these gatherings involve loud music and a large number of vehicles parked on the street. (*Id.*)[17]

---

[17] The City does not dispute that there are assemblies of a secular nature hosted on private property in Jackson and that these secular gatherings are not required to undertake any application process in order to assemble. (Defs' Resp. to Pls' St. of Mat. Facts paras. 52 – 55, ECF No. 38-1.) Likewise, the City does not dispute that other religious denominations host weekly or monthly Bible study groups in homes. (*Id.* at paras. 56-58.) These assemblies also

Although Defendants argue that Plaintiffs have not sufficiently explained how these secular gatherings are proper comparators to Plaintiffs' gatherings, the Court finds that, for the purpose of establishing a prima facie case, Plaintiffs have presented enough evidence, in particular the deposition testimony of Plaintiff Shari Yetto, to show that their religious gatherings were treated differently than similar secular gatherings. At trial, Defendants will have the opportunity to rebut Plaintiffs' evidence as to whether the previously mentioned secular gatherings are, in fact, proper comparators.

Accordingly, the Court finds that Plaintiffs have set forth prima facie evidence to support their equal-terms RLUIPA claims, and Defendants must bear the burden of persuasion as to each of the elements of those claims. *See* 42 U.S.C.A. § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim . . . .")

Next, the Court must decide if the Zoning Ordinance applies to the Temple of the Ancient Ones as a matter of law. Plaintiffs contend that it does not, and they seek a declaratory judgment to that effect. Because there are disputed issues of fact as to whether the Temple of the Ancient Ones is a church, the Court denies this aspect of Plaintiffs' motion.

In support of their motion, Plaintiffs point to the following evidence. The Zoning Ordinance regulates "churches or similar places of worship" as a use that is permitted by way of a special exception. However, the Zoning Ordinance does not define "churches or similar places of worship." Furthermore, the City maintains no policies or guidance with respect to the

---

have not been required to comply with zoning regulations for religious organizations. (*Id.* at para. 59.)

definition or interpretation of "churches or similar places of worship" as that phase is used in the Zoning Ordinance. According to Plaintiffs, because the Zoning Ordinance fails to define "church" or "similar places of worship," the provision is ambiguous and must be resolved using the customary principles of statutory construction. Plaintiffs ask the Court to adopt the "natural and ordinary meaning" of the term "church" as set forth in *Black's Law Dictionary* - "a building dedicated to worship."

Plaintiffs contend that their gatherings do not require a dedicated building and, instead, they meet outside or in their home. They state that their residence is not held out to be a place of worship open to the public; it does not keep regularly scheduled hours or host daily or weekly programs; and they do not offer any activities or services that are traditionally associated with operating a church building. (P. Yetto Decl. ECF No. 33-13; S. Yetto Decl. ECF No. 33-14.)

In response, Defendants offer their own definition of the term "church" as a building or place for worship or "a body or organization of religious believers." Defendants point to the following evidence which suggests that the Temple of the Ancient Ones is a church or similar place of worship. The complaint itself alleges that Plaintiffs are "members of the Pagan church known as The Temple of the Ancient Ones." (Cmplt para. 11, ECF No. 1.) At her deposition, when Plaintiff Shari Yetto was asked if she was "a member of the Pagan church known as The Temple of the Ancient Ones," she answered "yes." (S. Yetto's Depo. p. 8, ECF No. 34-4.)

Plaintiff Shari Yetto testified that The Temple of the Ancient Ones meets twenty-four to thirty-two times a year to worship a god or goddess around a stone circle with an altar; each gathering lasts thirty to forty-five minutes. (*Id.* at pp. 13 – 14, 23, 74). The worship is conducted with the members in a circle that is marked by stones and complete with altars. (*Id.* at pp. 14, 16, 18, 20).

Shari Yetto also testified that they put events on Temple of the Ancient Ones' Facebook page to let people know "hey, we have a pagan church here." (*Id.* at p. 24). Plaintiffs' Internet postings and documents describe The Temple of the Ancient Ones as a church. Temple of the Ancient Ones Jackson TN Friendly Pagans ("We are a 501c3 Pagan Church located in Jackson, TN since February 1, 2011.") (ECF No. 38-2); Temple of the Ancient Ones Release of Liability and Agreement to Hold Harmless (referring to the Temple as "the Church") (ECF No. 38-3). Additionally, Temple of the Ancient Ones has bylaws that members must read and follow. Confidential Questionnaire at p. 5 (ECF No. 38-4.)

If "a church or other place of worship" requires a building, then Plaintiffs are correct that the Zoning Ordinance does not apply to them. However, if Defendants are correct that "a church or other place of worship" may be a building or a place of worship or a body of religious believers, then the Ordinance may apply – if Defendants can show that Plaintiffs' gatherings may be categorized as a place of worship or a body of religious believers subject to land use regulation. Defendants' evidence cited above would indicate that Plaintiffs' gatherings may be so categorized. However, it is undisputed that Christian churches in the Jackson area have been allowed to host weekly or monthly Bible study groups in various residential homes seemingly without having the Zoning Ordinance enforced against them. If at trial, evidence is produced showing that these Christian home study groups are similar in all relevant aspects to Plaintiffs' gatherings and that the City did not subject them to the requirements of the Zoning Ordinance, then the Court could find that, by its actions, Defendants have defined "churches and other places of worship" subject to the Zoning Ordinance as religious groups with a dedicated building which would lead to a subsequent finding that the Ordinance does not apply to Plaintiffs'

gatherings. However, there are disputed issues of fact that preclude such a finding at this stage of the litigation.

Next, Plaintiffs contend that the Zoning Ordinance violates RLUIPA facially and/or as applied. The Court must first determine what standard of review is appropriate. Plaintiffs contend that the Court must use strict scrutiny to equal-terms claims under RLUIPA while Defendants contend that a lesser standard is warranted. The parties agree that the Sixth Circuit has not decided this issue.

In support of their argument, Plaintiffs rely on *Konikov v. Orange Cty.*, Fla., 410 F.3d 1317 (11th Cir. 2005), as persuasive authority for the proposition that RLUIPA directs the Court to apply strict scrutiny when a land use provision treats religious organizations on less than equal terms than nonreligious organizations. Defendants rely on Judge Amul Thapar's discussion of strict scrutiny in the dissent in *Tree of Life III*, 905 F.3d 357, 382-83 (Thapar, J. Dissent).

Judge Thapar analyzed the standard to use in RLUIPA cases as follows.

One final point about the legal standard: because RLUIPA places the ultimate burden on the government, some courts have interpreted the text to include a strict scrutiny "safe harbor." 42 U.S.C. § 2000cc-2(b); *Midrash Sephardi* [*v. Town of Surfside*], 366 F.3d [1214] at 1232 [11th Cir. 2004]. For these courts, a zoning action that is a prima facie violation can be saved if the government can show that it satisfies strict scrutiny. But just as "similarly situated" does not appear anywhere in the Equal Terms provision, neither does "strict scrutiny" nor any other terms that might trigger a strict scrutiny analysis. And, again, when words do not appear in a statute, we should not add to what Congress has provided with what we think Congress should have provided. Congress could have told courts to apply strict scrutiny if the plaintiff makes out a prima facie case. In fact, Congress did exactly that—in a different provision in RLUIPA. Just a few lines above the Equal Terms subsection, Congress included a provision that prohibits governments from enacting land-use regulations that substantially burden religious exercise unless they have a "compelling governmental interest" and the regulation is the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc(a)(1). We thus know that Congress was aware of the strict scrutiny buzzwords and included none of them in the Equal Terms provision. *Centro Familiar* [*Cristiano Buenas Nuevas v. City of Yuma*], 651 F.3d [1163] at 1171 [(9th Cir. 2011) ("The Constitutional phrases, 'substantial burden,' 'compelling

governmental interest,' and 'least restrictive means' are all included in the 'substantial burden' provision, not the 'equal terms' provision."); *Lighthouse Inst. [for Evangelism, Inc. v. City of Long Branch]*, 510 F.3d [253] at 269 [(3d Cir. 2007)] ("[W]e find that Congress clearly signaled its intent that the operation of the Equal Terms provision not include strict scrutiny by the express language of [the Substantial Burden provision] ...."). We must respect that decision and refrain from adding it in ourselves. And that means that if governments do not carry their burden once shifted, RLUIPA holds them liable without exception.

*Tree of Life III*, 905 F.3d 357, 382-83 (Thapar, J., dissenting).

The Court agrees with Plaintiffs that Judge Thapar's dissent does not reject a strict scrutiny standard in favor of a lesser standard. Instead, he urges that a strict scrutiny analysis not be used as a "safe harbor" to benefit the government after a finding of a prima facie violation of RLUIPA. *Id.* Instead of allowing the government such a safe harbor, he proposes an interpretation of RLUIPA that holds governments "liable without exception." *Id.*; *c.f. Tree of Life Christian Sch. v. City of Upper Arlington*, 823 F.3d 365, 369–70 (6th Cir. 2016) (*Tree of Life II*) ("All of our sister circuits that have interpreted the Equal Terms Provision have glossed the statutory language in a way that allows defendant governments some safe harbor for permissible land-use regulation.")

However, at this juncture, this Court need not decide what standard is appropriate (strict scrutiny, some lesser standard, or liability "without exception") because, as explained in *Tree of Life II*,

[g]ranting summary judgment to the government is erroneous under any test, because "summary judgment must be denied in a proceeding for equitable relief ... [when] genuine issues of material fact exist." *Hasan v. Clevetrust Realty Inv'rs*, 729 F.2d 372, 374 (6th Cir. 1984); *cf. Hess v. Schlesinger*, 486 F.2d 1311, 1313 (D.C. Cir. 1973) (holding that, when a plaintiff seeking an injunction raises a genuine issue of fact material to the defendant government's claim regarding its justification for a policy, summary judgment is inappropriate); *Windsurfing Int'l, Inc. v. Ostermann*, 534 F. Supp. 581 (S.D.N.Y. 1982) (holding that, when a defendant's assertion depends on proof to be offered at trial, summary judgment is inappropriate).

*Tree of Life I*, 823 F.3d at 370–71. In the present case, there are disputed issues of fact as to Plaintiffs' equal-terms claim, as discussed below, and Plaintiffs have sought equitable relief. Therefore, summary judgment is not appropriate on Plaintiffs' claims that the Zoning Ordinance violates RLUIPA facially or as applied.

As for their facial challenge, Plaintiffs assert that, if the Court finds that Defendants' interpretation of the term "[c]hurch or similar place of worship" controls, then such an interpretation would violate RLUIPA by facially differentiating between religious and nonreligious assemblies or institutions. Because the Court has found that there are disputed issues of fact as to the meaning of that term as used in the Zoning Ordinance, it would be premature for the Court to determine whether a finding as to one particular meaning would result in a subsequent finding that the Ordinance facially violates RLUIPA. The Court must first determine the meaning of the term "[c]hurch or similar place of worship" before proceeding to the second step of determining a RLUIPA violation. Therefore, this portion of Plaintiffs' motion must be denied.

As for the applied challenge, Plaintiffs assert that Defendants have imposed zoning requirements on their home which hosts a religious based group but have placed no additional requirements on homes which regularly host secular gatherings so as to constitute a violation of RLUIPA. In support of their argument, they point to evidence that organizations of a secular nature regularly meet on private property, such as Boy Scouts and Girl Scouts, and families regularly hold non-religious events of a comparative size and frequency to that of Plaintiffs' religious gatherings. Plaintiffs argue that Defendants have applied the Zoning Ordinance in a manner that requires them to go through the process of applying for and obtaining a special use exception to hold small, religious gatherings on their private property, while secular gatherings

of a similar size are not required to undertake such measures. Defendants have responded that Plaintiffs have not established that the proferred secular groups are proper comparators.

As noted above, "a comparator for an equal terms claim must be similarly situated with regard to the regulation at issue." *Tree of Life III*, 905 F.3d at 368. At this stage in the litigation, the record has not been fully developed as to whether the comparators identified by Plaintiffs are similarly situated to Plaintiffs and their gatherings for the purposes of the land use regulation at issue. Therefore, summary judgment must be denied on the as applied challenge.

In summary, Defendants' motion for summary judgment on Plaintiffs' § 1983 claim is **GRANTED** on the ground that the claim is barred by the statute of limitations. Defendants' motion for summary judgment and Plaintiffs' motion for summary judgment on the RLUIPA claim are both **DENIED** because there are disputed issues of material fact that preclude summary judgment.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: February 5, 2019.