**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARI YETTO and PAUL YETTO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 1:17-cv-01205-STA-jay** |
| | ) | |
| | ) | |
| **CITY OF JACKSON, JERRY GIST, in his** | ) | |
| **official capacity as mayor, and ELVIS** | ) | |
| **HOLLIS, in his official capacity** | ) | |
| **as city planner,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Shari and Paul Yetto filed this action against the City of Jackson, Tennessee, Mayor Jerry Gist, in his official capacity, and City Planner Elvis Hollis, in his official capacity, under the equal-terms provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc—2000cc–5, and under 28 U.S.C. § 1983, alleging a violation of the First Amendment's Free Exercise Clause.  In addition to damages, Plaintiffs sought a declaratory judgment ruling that the Zoning Ordinance at issue in this case does not regulate the type of religious gatherings held by them in their home, as well as a permanent injunction prohibiting the enforcement of the Zoning Ordinance against them and their religious gatherings.[1]

---

[1] On December 22, 2017, after a hearing, the Court orally granted Plaintiffs' motion for a preliminary injunction; a written order was entered on January 29, 2018.  Defendants and any persons acting in concert with them were enjoined from enforcing or threatening to enforce the Zoning Ordinance against Plaintiffs for holding religious gatherings in their home and on their private residential property until further orders of the Court.  (ECF Nos. 24, 25.)

On February 5, 2019, the Court granted Defendants' motion for summary judgment on Plaintiffs' § 1983 claim on the ground that the claim was barred by the statute of limitations and denied Defendants' motion for summary judgment and Plaintiffs' motion for summary judgment on the RLUIPA claim because there were disputed issues of material fact that precluded summary judgment. (ECF No. 43.)

The case was tried without a jury on February 28, 2019. In accordance with the Court's instructions, both parties have submitted proposed findings of fact and conclusions of law. (ECF Nos. 64, 65.) The Court, having considered the evidence presented at trial, including its credibility determinations, the arguments of counsel, the relevant case law, and the entire record, makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.[2]

<u>Findings of Fact</u>

1.     The Yettos are a married couple and two of the founders of a non-profit religious organization known as the Temple of the Ancient Ones.

2.     The Temple of the Ancient Ones is a 501(c)(3) religious organization.

3.     Prior to her marriage, Shari Yetto owned the two adjacent plots of land in the city of Jackson, Tennessee, where she and her husband live and where the religious gatherings at issue in this case occurred. One of the plots of land is located at 203 Harts Bridge Road. The other plot of land is on the corner of Dustin Road, which is adjacent to the plot at 203 Harts Bridge Road. One plot is owned in fee simple not subject to any liens or encumbrances, while the other is owned subject to a mortgage.

4.     Although Paul Yetto does not own the property in question, he has resided there since his marriage and has contributed to improvements and maintenance of the property.

---

[2] "In an action tried on the facts without a jury ..., the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a).

5.      The Yettos follow the Pagan faith tradition, an "earth-based" religion through which they celebrate Pagan gods and goddesses. There are ten to fifteen members of the Temple of the Ancient Ones who gather to perform Pagan religious traditions at the Yettos' residence.  Each year the members hold between twenty and thirty gatherings, with each gathering lasting thirty to forty-five minutes. At the end of the gatherings, the members share a meal.

6.       During these gatherings, the Temple's members gather in a circle that is marked by stones and has an altar; the members worship their god and goddess during a traditional written Pagan ritual that is presided over by Paul Yetto, the Temple's high priest.

7.      The gatherings occurred over a period of approximately five and a half years prior to this litigation.

8.      The property in question is the private residence of the Yettos and consists of a house and barn. There are no building or instruction rooms or other portions of the property dedicated to the gatherings. The residence is not open to the public.  There are no regular hours for congregants to visit and use the facilities. The Temple of the Ancient Ones does not own any part of the property.

9.      In March 2016, Elvis Hollis, a city planner, received an anonymous complaint over the telephone in which the caller reported that someone was operating a church on the Yettos' property, which is in a residential neighborhood.  This was the only complaint received by the City concerning the use of the property.

10.      After receiving the anonymous phone call, Hollis drove by the property and observed a sign labeled "Temple of the Ancient Ones."[3]

---

[3] The sign was small and was on the lot adjacent to the Yettos' residence.  It stood alongside other signs showing subjects for which the Yettos had an affinity - such as a sign for Avon

11. On March 31, 2016, Hollis, on behalf of the City's Planning Department, sent a letter to the Yettos with a subject line that read: "ZONING VIOLATION AT 203 Harts Bridge Road, Jackson, TN 38301." The letter stated:

> Our office has been made aware that there may be a church operating at this location.... Churches or similar places of worship are uses permitted as special exceptions within [the RS-1] zoning classification. Therefore, you must obtain approval by the City Board of Zoning Appeals in order to operate a church at this location. A site plan that includes an off-street parking area must be submitted along with your application to appear before this board which meets on the fourth Monday of every month. In addition, the structure used for this purpose must be in compliance with all building and fire codes. The use of this property for a church should be discontinued until the process outlined above is completed.[4]

The letter provided that "[f]ailure to correct this problem within thirty (30) days of your receipt of this letter will result in further action by the City of Jackson." "Further action" was explained as:

> [A]ny person violating any provision of the City of Jackson Zoning Ordinance who fails to correct said violation within this notification period shall be issued an injunction through the Environmental Court to correct this problem or face a fine of Fifty Dollars ($50.00) for each separate violation until the required action has been taken or face imprisonment not to exceed ten (10) days. Each day that any such violation continues shall constitute a separate violation.

12. Hollis sent the letter in response to the complaint from the anonymous caller and his observance of the Temple sign on the Yettos' property.

---

products and a sign reading "Watch Out for Motorcycles." The Yettos later removed the sign, in part, in response to the City's letter.

[4] Plaintiffs contends that the letter from Hollis "informed Plaintiffs that they were in violation of Zoning Ordinance, art. V § 2, because their gatherings constituted operation of a 'church,' which would require Plaintiffs to obtain a special exception permit." (Pls' Trial Br. p. 21, ECF No. 64.) The Court does not read the letter quite so definitely. The plain language of the letter states that the City had been made aware that Plaintiffs "may" be operating a church at the property in question and, if they were, certain steps needed to be taken to get a special zoning exception and to avoid "further action."

13.     Pursuant to the City's Zoning Ordinance, each zoning category has uses that are permitted uses, uses that are prohibited, and uses that are permitted only with approval from the Board of Zoning Appeals by a special exception.  The Board of Zoning Appeals may attach conditions for approval of requests for special exceptions.

14.     To get a special-use exception, a property owner must submit an application, a letter of justification, a site plan, and pay a fee; after the application is completed, the request is placed on the agenda for the next Board of Zoning Appeals meeting.  As part of the process for obtaining a special exemption, an applicant must appear before the Board. The application fee for obtaining a special exemption is $100.

15.     The Yettos' property is located in a RS-1 single family residential district. Churches or similar places of worship are not permitted in residential districts except by special exception.[5]

The City of Jackson Zoning Ordinance, art. V § 2, provides, in relevant part:

Following public notice and hearing and subject to appropriate conditions and safeguards, the Board of Zoning Appeals may permit, as special exceptions:

   1.  Churches or similar places of worship

16.     The Zoning Ordinance does not define the phrase "churches or similar places of worship," and the City maintains no policies or guidance with respect to the definition or interpretation of "churches or similar places of worship" as that phase is used in the Zoning Ordinance.

17.     The Planning Department reviews applications for special exceptions and makes recommendations to the Board of Zoning Appeals through a planning staff report.  Before the Board meeting, a planning staff member orally reviews the recommendations with the applicant.

---

[5]  The RS-1 Zoning Ordinance also permits similar nonreligious uses such as country clubs, private clubs, and schools by special-use exception.

At the Board meeting, the planning staff presents the recommendations. At this meeting, the applicant can present reasons as to why the Board should reject any conditions set forth in the recommendations. Members of the Board are not City employees, but rather citizens appointed by the mayor and city council. The Board has final authority on whether to accept, alter, or reject the recommendations made by the planning staff. The Board has the final decision on whether to grant or deny a special-use exception application and to determine any conditions. The Board does not always accept the recommendations of the planning staff.

18. When the Planning Department receives a complaint about a possible zoning violation, a form letter is sent to the property owner on whose property the violation allegedly occurred. If the property owner responds and denies the alleged violation, no further action is taken, unless the Planning Department receives another complaint or receives other information showing a violation.

19. While the parties agree that the Yettos discussed the situation repeatedly and at length with Planning Department staff, they dispute whether the Yettos claimed to be a church when they communicated with the staff. The Yettos acknowledge that they used the term "church" initially during calls with Hollis, but they maintain that they stated more than once that they did not believe that their gatherings were any different than Bible studies that were occurring in Christian homes in the area; they also contend that they described the nature of their gatherings to the staff.

In light of the Yettos' admission that they used the term "church" at least initially in communications with officials and the evidence in the record showing that the Yettos repeatedly described their gatherings as a "church" in certain documents and on social media, the Court credits the testimony of Hollis that the Yettos did not dispute that they were operating a church

on their property after receiving the possible zoning violation letter and during the application process for a special exception.[6]

20.     The City did not define Plaintiffs' property use as a church, nor did it try to rezone the property as a church; instead, the planning staff determined that the RS-1 Zoning Ordinance applied to the Yettos' property based on the Yettos' statements and documents presented by the Yettos that indicated that they were operating a church.[7]

21.     Both Hollis and Stan Pilant, head of the Planning Department, testified that, if the Yettos had reported that they were hosting small gatherings of fellow Pagans for fellowship and discussion of their religion akin to a Bible study, the City would not have required a special-use exception and no further action would have been taken unless another complaint was filed.  The Court credits this testimony.

22.     With the assistance of Hollis, the Yettos submitted an application to the Board of Zoning Appeals seeking a special exception.  Hollis went to the Yettos' residence, toured their property, and took photographs, which he placed in the application file.   The City's Engineering Department, at the request of Hollis, conducted a traffic review at the Yettos' residence.

---

[6] *See*, *e.g.*, Complaint at ¶ 11 (ECF No. 1) ("Plaintiffs are members of the Pagan church known as the Temple of Ancient Ones".); S. Yetto Declaration, at ¶ 4 (ECF No. 15-2) ("I am a member of the Pagan church known as the Temple of Ancient Ones".); P. Yetto Declaration, at ¶ 3 (ECF No. 15-2 "I am a member of the Pagan church known as the Temple of Ancient Ones".); Trial Exhibit 1, Tab 6 at pp. 272 ("The Temple of the Ancient Ones is a Pagan Church that was founded in Jackson, Tennessee in 2011."); 273 ("Call us at the church in Jackson, TN at . . . ."); 277 ("WE, THE UNDERSIGNED, being original incorporators as herein before named, for the purpose of incorporating this not-for-profit church corporation under the laws of the state of Tennessee, do make . . . ."); Trial Exhibit 1, Tab 17 at p. 1 ("Shari and Paul Yetto are members of a pagan church, 'The Temple of Ancient Ones.'").

[7] The Court does not believe that Plaintiffs failed to clarify that they were not operating a church out of a desire to create confusion but, instead, in a good faith attempt to be law-abiding citizens and comply with the City's Zoning Ordinance.

23.    Hollis prepared a planning staff report for the use of the Board of Zoning Appeals.  The report stated that the planning staff recommended approval of the use of the property as a place of worship contingent upon the following:

>    1. A walk thru inspection be completed by the City of Jackson Building Department and Fire Marshal before occupying the buildings.
>
>    2. All applicable building permits are obtained before any modification of the buildings.
>
>    3. A privacy fence or a vegetative screen needs to be installed around the perimeter of the parking area in order to provide a screen for the adjoining residential properties.
>
>    4. The existing 16' driveway needs to be widened to a minimum 24' two-way drive in order to meet the standards governing driveways.
>
>    5. Both lots owned by the applicant need to be combined by a final plat since the driveway access is located on 104 Dustin Drive.

The report stated that the parking lot exceeded the requirements for "a place of worship with the seating capacity of 20 people," which was drawn from Hollis' knowledge that the Yettos planned on having a maximum of twenty people attend their gatherings.

24.    The July 25, 2016 meeting of the Board of Zoning Appeals at which the Yettos' application was to be considered was canceled because the notice to affected property owners was not sufficient.  Additionally, the Yettos had not submitted a revised site plan which was required in order for their application to be complete.  Consequently, no decision was made as to whether the Yettos could obtain a special exception.

25.    Given that Hollis would not recommend that they receive a special exception without the changes listed in the planning staff report and the high cost of these changes, the Yettos decided that they would not pursue a special exception and, instead, would pursue their rights in a lawsuit.  Thus, the Board of Zoning Appeals was never given the opportunity to make a decision as to whether it would approve a special exception with or without the recommended changes.

26.     The Zoning Ordinance of the City of Jackson was created to provide administration, enforcement, and amendment" of city zoning regulation.   "In interpreting and applying the provisions of [the Zoning Ordinance, its provisions] shall be considered as the minimum requirements for the promotion of the public safety, health, morals and general welfare."  Zoning Ordinance, art. VIII § 4.

27.     The Planning Department of the City of Jackson regulates the use of property in accordance with the Zoning Ordinance.

28.     The Zoning Ordinance includes "Private Clubs" as a use that is permitted only by way of special exception.  The term "Private Clubs" is defined in the Zoning Ordinance as "[b]uildings and facilities owned or operated by a corporation, association, person or persons for a social, educational or recreational purpose, but not primarily for profit or to render a service which is customarily carried on as a business."  Zoning Ordinance, art. III.

29.     In the City, there are organizations and assemblies of a secular nature that regularly meet on private property, such as Boy Scouts and Girl Scouts.  In addition, families regularly hold events of comparative size and frequency to that of the Yettos' religious gatherings, such as family reunions, holiday parties, and gatherings to watch sports.   There is no Zoning Ordinance provision which governs small secular gatherings in homes. Accordingly, even if the City were to receive a similar anonymous complaint regarding the hosting of sports viewing parties or barbeques, there would be no code provision under which to cite them.

30.     There are multiple churches in the Jackson area that advertise that they host weekly or monthly Bible study groups in various residential homes. None of these homes have been required to comply with zoning regulations for religious organizations.

31.     The Yettos ceased holding all religious gatherings after receiving the letter from Hollis and did not host another gathering until after this Court granted a preliminary injunction in their favor.  During the time period between the receipt of the letter from the City and the issuance of the injunction, the Yettos were not only prohibited from holding regular Pagan assemblies at their home, they were also prohibited from holding sacred ceremonies for loved ones who had passed away.  Shari Yetto did not have religious memorial services for either of her parents.

Conclusions of Law

Standing

1.      As an initial matter, the Court finds that both Shari Yetto, as owner of the property, and Paul Yetto, as her husband and resident of the property and host of the religious gatherings, have standing to bring this lawsuit.

2.      RLUIPA provides that a claimant has standing under the statute "if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5).

3.      As noted by Plaintiffs, in Tennessee whether a particular asset is marital or separate property depends on the conduct of the parties rather than the record title of the asset. *Cohen v. Cohen*, 937 S.W.2d 823, 833 n. 12 (Tenn. 1996); *Altman v. Altman*, 181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005). Tennessee courts have classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, *Robertson v. Robertson*, 2001 WL 459100 at *3 (Tenn. Ct. App. May 2, 2001), or when the spouse owning the separate property intended the separate property to be converted to marital property. *Cronin-Wright v. Wright*, 121 S.W.3d 673, 675 (Tenn. Ct. App. 2003).

4.     Although the property at issue in this case is titled in Shari Yetto's name and she purchased it prior to the marriage, Paul Yetto lives on the property, has contributed to its improvement, and the couple treats the home as marital property. Accordingly, Paul Yetto has a property interest under Tennessee law sufficient to meet RLUIPA's requirements.

<u>Declaratory Judgment</u>

1.     Plaintiffs seek a declaratory judgment that the RS-1 Zoning Ordinance does not apply to their small religious gatherings because these gatherings do not constitute a "church or similar place of worship" within the meaning of the Zoning Ordinance.

2.     The Zoning Ordinance does not define "church or similar place of worship," and the City has no official policy as to how to define that term.

3.     The parties have presented various definitions concerning the meaning of the word "church" and debate whether a "church" requires a dedicated building, *see*, *e.g.*, *Black's Law Dictionary* (10th ed. 2014) (defining "church" as "a building dedicated to worship, esp. Christian worship; loosely a building dedicated to any type of religious worship" and as "[a]n organization or assembly of worshippers, esp. Christian ones having a distinct history, liturgy, and ecumenical practice; a particular division or sect of Christian believers; a denomination.") and *Webster's Ninth New Collegiate Dictionary* (1988) (defining "church" to include "a building for public and esp. Christian worship," "a body or organization of religious believers," and "a public divine worship"). However, the Court need not refer to a dictionary to ascertain the definition of the term ""church or similar place of worship" because both Hollis and Pilant testified that the RS-1 Zoning Ordinance does not apply to small religious gatherings such as those held at Plaintiffs' residence. Despite the confusion caused by Plaintiffs' use of the term "church" in referring to their gatherings, ultimately, the Court relies on how the City defined that term.

4. Accordingly, the Court finds as a matter of law that the RS-1 Zoning Ordinance does not apply to the type of gatherings being held at the Yettos' residence on the date that Hollis sent the letter to the Yettos informing them of the anonymous complaint. Consequently, the Yettos are not required to obtain a special-use exception in order to operate the Temple of the Ancient Ones on their property.

5. The Court hereby issues a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and any other persons acting in concert with them from enforcing or threatening to enforce the RS-1 Zoning Ordinance against Shari and Paul Yetto for holding small religious gatherings in their home and on their private residential property of the type that were held on their property and which led to this litigation. Thus, the Yettos are free to continue, as in the past, to invite and host small groups of people on their property for gatherings that include religious worship.

RLUIPA Claims

1. RLUIPA prohibits governments from implementing land use regulations that impose "a substantial burden" on religious exercise or that "treat[ ] a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C.A. § 2000cc. Plaintiffs' claims are brought under the equal-terms aspect of RLUIPA.

2. It is a violation of RLUIPA if: (1) a statute facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute is "gerrymandered" in a way that it places a burden solely on religious, as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute is selectively enforced against religious, as opposed to nonreligious, assemblies or institutions. *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1308 (11th Cir. 2006). Plaintiffs have asserted claims for the first and third

types of violations. That is, they claim that (1) the Zoning Ordinance facially differentiates between religious and nonreligious assemblies and institutions and that (2) the Zoning Ordinance is selectively enforced against religious assemblies or institutions.

3.      Plaintiffs argue that, should the Court find that Plaintiffs' gatherings fall within the definition of "[c]hurch or similar place of worship," then such an interpretation would cause the Zoning Ordinance to violate RLUIPA by facially differentiating between religious and nonreligious assemblies or institutions. Because the Court has found that the gatherings do not fall within that definition, Plaintiffs' facial challenge to the Zoning Ordinance fails.

4.      As for the as-applied challenge, Plaintiffs assert that Defendants have imposed zoning requirements on their home which hosts a religious based group but have placed no additional requirements on homes which regularly host secular gatherings so as to constitute a violation of RLUIPA. In support of their argument, they point to evidence that organizations of a secular nature, such as Boy Scouts and Girl Scouts, regularly meet on private property and families regularly hold non-religious events of a comparative size and frequency to that of Plaintiffs' religious gatherings. Plaintiffs argue that Defendants have applied the Zoning Ordinance in a manner that requires them to go through the process of applying for and obtaining a special-use exception to hold small, religious gatherings on their private property, while secular gatherings of a similar size are not required to undertake such measures. Defendants contend that Plaintiff's as-applied claim fails because Plaintiffs have not identified proper comparators and because their claim is not ripe for review.

5.      The Court need not determine if the comparators identified by Plaintiffs are proper because the Court agrees with Defendants that the as-applied claim is not ripe for judicial review in that a decision was never made as to Plaintiff's request for a special-use exception.

6. For land use disputes to be ripe, including RLUIPA claims, "the governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue." *Grace Community Church v. Lenox Tp.*, 544 F.3d 609, 615 (6th Cir. 2008); *see also Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 538 (6th Cir. 2010). The need to develop a complete record, "preference for avoiding unnecessary judicial entanglement in constitutional issues, and preference for allowing local resolution of local land use disputes" supports dismissal based on a lack of finality. *Grace Community Church*, 544 F.3d at 615; *see also Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x 609, 613 (6th Cir. 2008) ("[F]ederal courts have entertained a long-standing rule that local government entities first issue final decisions regarding the land at issue before any challenge to such decision is mature for federal review.").

7. In the present case, Plaintiffs filled out the initial application for a special-use exception and paid the application fee but did not follow through with the application process. The planning staff reviewed Plaintiffs' application and recommended approval of the use of the property as a place of worship contingent upon five conditions. Plaintiffs were informed of the five conditions. After learning that a second piece of property was involved, Plaintiffs were asked to provide a revised site plan to include the second parcel; but Plaintiffs refused to submit a revised site plan. This led the City to cancel the July 2016 Board of Zoning Appeals meeting that was set to hear Plaintiffs' application. Consequently, the Board never heard or made a determination on Plaintiffs' special-use exception application.[8]

---

[8] Plaintiffs contend that their failure to submit a revised site plan should have alerted the City to the fact that they were not claiming that their gatherings were a church. In light of Plaintiffs' failure to clarify the nature of the gatherings initially, there is no reason that the City should have been put on notice as to a change in Plaintiffs' stated position.

8.      Plaintiffs argue that exhaustion of administrative remedies is not required for RLUIPA claims outside the context of inmate actions. They rely on *Dilaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 507 (6th Cir. 2002), in support of their argument.  In *DiLaura* the board of zoning appeals had denied the plaintiffs' variance request. 30 F. App'x at 507.  The present case is more analogous to *Grace Community Church* because Plaintiffs, like Grace Community Church, have not been before the Board of Zoning Appeals. 544 F.3d at 613-14.

9.      Plaintiffs also contend that a final decision was actually made. They note that the City's planning staff has decision-making authority as to zoning enforcement and they contend that the letter sent to Plaintiffs was a "zoning violation" letter.  According to Plaintiffs, the planning staff was vested with decision-making authority to send an enforcement letter enjoining their constitutional rights and to determine whether a use complied with approved uses under the Zoning Ordinance.  Thus, they reason that their RLUIPA claims challenge the "enforcement" of the Zoning Ordinance against them which was a final decision ripe for adjudication.

To the contrary, as discussed above, the letter merely stated that information had been received that Plaintiffs were operating a church at their residence and that churches in that particular zone required a special zoning exception.  No "enforcement" action was taken against Plaintiffs.

10.     Although Hollis testified that a zoning violation letter is part of the zoning enforcement process and that any planner on the staff has the authority to issue a zoning violation letter and Pilant testified that the Planning Department is "charged with carrying out the regulations that are within our zoning ordinance and governing the uses to minimize hazards and impacts to health safety we offer the public" and that that the Planning Department has the ability to cite individuals in Environmental Court and issue summons (Trial Tr. PageID 1315, ECF No. 60),

enforcement only comes into play when a decision as to a use or special exception has been made.

11.     Furthermore, although Plaintiffs are correct that the Planning Department staff, including Hollis and Pilant, have the authority to make determinations of whether a use complies with the Zoning Ordinance, it is undisputed that, pursuant to the Zoning Ordinance, a church may not operate in a RS-1 zone without going before the Board of Zoning Appeals to get a special-use exception. Hollis and Pilant had no authority on their own to approve a special-use exception. The letter sent by Hollis merely put Plaintiffs on notice that, if they were operating a church at their home, they would need to apply for a special-use exception. Plaintiffs then sought to obtain a special-use exception but did not complete the process.  Therefore, there was never a decision by the Board as to whether they could continue to hold their gatherings at their home.

12.     Next, Plaintiffs contend that the letter sent by Hollis "enjoined Plaintiffs constitutional rights and was not received by Plaintiffs in any respect as anything other than a final determination."  Even if Plaintiffs' subjective view of the letter is relevant as to whether a decision had been made, their subjective view was not objectively reasonable in light of the City's willingness to work with them on the special exception process.

13.     Plaintiffs refused to provide a revised site plan to complete their application. This prevented the Board from considering the application. Thus, the Board has never made a decision on Plaintiffs' application. Consequently, there is a need to develop a complete record. Further, the presence of both the preference for avoiding unnecessary judicial entanglement in constitutional issues and for allowing local resolution of land use disputes support a finding that Plaintiffs' claim is not ripe. The Board could have approved Plaintiffs' request for a special-use exception without the recommendations from the planning staff, which would have negated any

need for this litigation. Therefore, the Court finds that Plaintiffs' as-applied claim is not ripe for review. *See Grace Community Church*, 544 F.3d at 615-616 (finding that the RLUIPA as-applied claim lacked finality when the plaintiff failed to complete the process before the zoning board).

14.     Plaintiffs also contend that the City was also put on notice that their gatherings did not constitute a church in communications between the City and their attorneys. According to Plaintiffs, they clarified their position in letters from their counsel. (Tr. Ex. 1, tabs 17 & 18.) In the second letter, Plaintiffs' counsel reiterated that Plaintiffs should not be subject to zoning ordinances for church buildings and requested that the City withdraw its position that the religious activities that took place on Plaintiffs' property did not fall under the City's Zoning Ordinance. (*Id.* at tab 18.)  However, counsel continued to describe Plaintiffs as being "members of a pagan church." (*Id.* at tab 17.)

15.     Despite these communications, Plaintiffs provided enough evidence initially to give the City reason to believe that they were a church. Even though bad faith may not be required for a RULIPA violation, property owners bear some responsibility in providing correct information about their property usage to the Planning Board.  Property owners cannot fail to dispute that they are operating a church and then fault the Planning Board for going forward with its zoning requirements. The complaint itself alleges that Plaintiffs are "members of the Pagan church known as The Temple of the Ancient Ones."  (Cmplt para. 11, ECF No. 1.)  At her deposition, when Plaintiff Shari Yetto was asked if she was "a member of the Pagan church known as The Temple of the Ancient Ones," she answered "yes." (S. Yetto's Depo. p. 8, ECF No. 34-4.)  Shari Yetto also testified that they put events on Temple of the Ancient Ones' Facebook page to let people know "hey, we have a pagan church here.¨ (*Id.* at p. 24). Internet postings and documents describe The Temple of the Ancient Ones as a church. ("We are a 501c3 Pagan Church located

in Jackson, TN since February 1, 2011." (ECF No. 38-2); Temple of the Ancient Ones Release of Liability and Agreement to Hold Harmless (referring to the Temple as "the Church¨) (ECF No. 38-3).

16. Throughout their testimony, both Hollis and Pilant stated that it was Plaintiffs' own use of the term "church" that motivated the City to inform Plaintiffs that they must go through the process of attempting to obtain a special exception permit. Hollis testified that it is the applicant, not the City, that determines whether they constitute a church. The City has no duty to investigate whether applicants have correctly labeled their gatherings, and planning staff does not investigate whether the applicants have given the correct label. By the time Plaintiffs tried to straighten out the confusion through their attorneys, it was too late to change definitions as far as the City was concerned. As Pilant testified, they had been given too much information by Plaintiffs indicating that they were, in fact, operating a church.

17. The Court concludes that there is no evidence that the City requires a special-use exception permit for small gatherings at private residences regardless of the purpose of that gathering – whether secular or non-secular. If Plaintiffs had initially reported that they were only hosting small gatherings of fellow Pagans for fellowship and discussion of their religion akin to a Bible study, the City would not have required a special-use exception. Therefore, the Court finds that the City does not generally treat gatherings for a religious purpose on less than equal terms as nonreligious gatherings, and, in particular, did not treat Plaintiffs' religious gatherings differently; thus, Plaintiffs' as-applied claim fails for this reason also.

Attorney Fees

Clearly, Plaintiffs do not qualify as prevailing parties on their § 1983 claim or their RLUIPA claim so as to qualify for attorney fees under 42 U.S.C. § 1988(b). *See Tex. State*

*Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (holding that prevailing party status is a "statutory threshold" which must be crossed before there is any consideration of a fee award.) However, the litigation has resulted in the entry of a permanent injunction barring enforcement of the Zoning Ordinance against Plaintiffs' gatherings which may entitle them to an award of attorney's fees.

Plaintiffs will have seven (7) days from the entry of this order in which to file a notice as to whether they seek an award of attorney's fees based on the granting of their request for a declaratory judgment and the issuance of a permanent injunction. If Plaintiffs file a notice of intent to seek attorney's fees, the Court will enter a briefing schedule on the issues of whether Plaintiffs are entitled to such an award and, if so, the amount to which they are entitled.

Summary and Conclusion

The Court finds in favor of Plaintiffs on their request for a declaratory judgment and finds that the issuance of a permanent injunction is warranted. The Court concludes as a matter of law that the RS-1 Zoning Ordinance does not apply to the type of gatherings being held at Plaintiffs' residence on the date that the City sent the letter to Plaintiffs informing them of the anonymous complaint and Plaintiffs are not required to obtain a special-use exception in order to operate the Temple of the Ancient Ones on their property.

The Court hereby issues a permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and any other persons acting in concert with them from enforcing or threatening to enforce the RS-1 Zoning Ordinance against Plaintiffs for holding small religious gatherings in their home and on their private residential property of the type that were held on their property that led to this litigation.

The Court finds in favor of Defendants on Plaintiffs' claims brought under RLUIPA. Defendants have previously been granted summary judgment on Plaintiffs' claims brought under 28 U.S.C. § 1983.

The Clerk of the Court is directed to withhold judgment until the issue of attorney's fees has been decided as discussed above.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 28, 2019.